ATTACHMENTS:

1. NOTICE OF REMOVAL
2. BRIEFS NOT YET HEARD DUE TO NO SUBJECT MATTER JURISDICTION OF JUDGE:
   A. MOTION FOR SUMMARY JUDGMENT
   B. MEMORANDUM OF LAW
   C. AFFIDAVIT OF MARLENE FEARING
   D. PLAINTIFF RESPONSE TO FAIRVIEW

ENTIRE CASE FILE IS FORTHCOMING.

| State of Minnesota | District Court |
|---|---|
| County HENNEPIN | Judicial District: **FOURTH** <br> Court File Number: <br> Case Type: **MEDICAL MALPRACTICE – NEGLIGENCE, ABUSE, ASSAULT and BATTERY.** |

**MARLENE FEARING**
Plaintiff,

vs.

**UNIVERSITY OF MINNESOTA MEDICAL CENTER/ aka MFAIRVIEW HEALTH CLINICS/aka UNIVERSITY OF MINNESOTA PHYSICIANS/aka UMP CORP. aka UMPHYSICIANS, DR. NIKOLA VULJAJ, NURSE MICHAEL RENDEL, and MAYO CLINIC OF ROCHESTER, MN.**
Defendant

CASE # 27-CV-21-6173

MOTION FOR SUMMARY JUDGMENT

**TO: CHIEF JUDGE TODDRICK BENNETTE (Pursuant to Minn. Civ. Rule of Procedure 63.03 - when a litigant files a "Notice to Remove" with an affidavit in support of that removal, the Chief judge of the court has no choice but to assign another judge to hear the case. This is further evidence of the absence of any "Rule of Law" in this case. Furthermore, the Honorable Judge Joseph Klein no longer has subject matter jurisdiction since all of his orders are VOIID as a matter of law. Yet we waste valuable court time. It appears that there are several areas of further examination as to federal questions, (Conspiring to conceal evidence of Plaintiff's medical records and conspiring to conceal a crime committed at a State sponsored medical facility. Further detailed in Memorandum)**

<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Minn. Rule of Civil Procedure 56, Plaintiff Marlene Fearing moves for a Summary Judgment on all her claims against all defendants, all of whom are being sued in their Respective Official and Personal capacity (Collectively). In Claim I, Plaintiff challenges all University of Minnesota Medical Facilities' refusal to recognize the physical, psychological

1

Michael Rendel on May 3, 2019, at the University of Minnesota Hospital. Reports of Investigators and 8 separate mandated reporting by other medical personnel acknowledging the abuse, assault and battery,

(b) It's criminal conduct by injecting toxic poisons into Plaintiff in a deliberate attempt to harm or kill her.

(c) It's refusal to report all medical procedures as required by both State and Federal Laws Guidelines.

(d) There was no answer submitted by either MHealth Fairview Services or University of Minnesota Medical Center to the Complaint, yet they were able to participate in the Fraud upon the court, conspiratorial conduct in denial of Plaintiff's due process rights.

(e) Their refusal to file an answer with the court is subject to a "Default Judgment" (attached).

(f) Their refusal to identify the poisonous toxins injected into the arm of an elderly vulnerable patient, Plaintiff in this matter by Dr. Nikola Vuljaj and Nurse Michael Rendel.

**3. A summary Judgment against University of Minnesota Physicians and all of its UMP aliases d/b/a UMP Corporation, Ump Physicians and any and all other entities hidden in its fictitious acronym "UMP".**

(a) Its negligence, abuse, assault, and battery on Plaintiff by University Minnesota employees, Dr. Nickola Vuljaj and Nurse Michael Rendel on May 3, 2019, at the University of Minnesota Hospital.

(b) Its refusal to identify the poisonous toxins injected into the arm of an elderly patient by Dr. Nikola Vuljaj and Michael Rendel and (1) lying about the criminal assault (2) attempting to sanitize the crime with a pretext of a blood contamination necessitating a new blood draw (3) ignored mandatory reporting to both State and Federal medical regulating agencies.

(c) Its damages to Plaintiff: physiologically, psychologically, by traumatic terrorizing and injury resulting in debilitating effects of the poisonings which render Plaintiff in need of constant care around the clock.

4.                                       SANCTIONS

Pursuant to Rule 11.02, and 11.03 Plaintiff is requesting that sanctions against all officers of the court including Judge Joseph R. Klein that partook in this travesty to commit fraud upon the

court.

5. A permanent injunction prohibiting the Defendants, their agents, successors and any person in active concert with the Defendants, from (1) denying Plaintiff her due process rights and (2) harassment and threats to her safety.

6. Jury trial to determine - Award Damages in excess of ($15,000,000.00) fifteen million, and additionally compensatory punitive damages against each Defendant.

7. Award Attorney fees of ($25,000.00) twenty-five thousand.

8. Grant Plaintiff such further relief as the Court deems proper.

Respectfully submitted this 6th Day of April, 2022.

*Marlene Fearing* (signature)

Marlene Fearing

Plaintiff - Attorney Pro Se

| State of Minnesota | District Court |
|---|---|
| County **HENNEPIN** | Judicial District: **FOURTH** <br> Court File Number: **27-CV-21-6173** <br> Case Type **CIVIL: MEDICAL MALPRACTICE – ABUSE AND ASSAULT** |

**MARLENE FEARING**
Plaintiff

Vs
**MAYO CLINIC IN ROCHESTER,** and
**UNIVERSITY OF MINNESOTA PHYSICIANS, aka UNIVERSITY OF MINNESOTA MEDICAL CENTER, Aka M HEALTH FAIRVIEW CLINICS aka UMMC**

Defendant

**PLAINTIFF'S RESPONSE TO FAIRVIEW DEFENDANTS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

---

TO: CHIEF JUDGE TODDRICK BARNETTE AND DEFENDANTS' ATTORNEYS

 It is not clear exactly what Defendant UMMC and MHEALTH FAIRVIEW are attempting to accomplish other than more "Fraud upon the court". They no longer have any standing in this lawsuit because they are in default. Plaintiff is in the process of initiating a Default Judgment against them. They were served on May 3, 2021, and they never answered the Summons and Complaint. Again, they complain in this Motion that they haven't been properly served. Evidence is to the contrary. (See: Background of UMMC and MHealth Fairview)

<u>As this case evolves, lines between civil and criminal become more blurred. This began as a civil case, but Ms. Fearing's evidence is demonstrating that criminal conduct is very much at play by Defendant's efforts to sanitize a crime they committed.</u>

1

This Response and Memorandum of law is filed by Marlene Fearing, attorney pro se in opposition to Defendants' Notice and Motion to Dismiss Pursuant to Rule 12.02(b), (d) and (e) as well as Minn. Stat. 145.682.

**For the reasons outlined below, Defendants' Motion should be denied in its entirety.**

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW

Marlene Fearing was a patient of the University of Minnesota Physicians and MHealth Fairview Clinics for over a decade and had positive results with all of her doctors, in particular Dr. Mary Logaeis who was her primary care doctor. On April 25, 2019, Ms. Fearing had just completed a yearly physical examination with **Dr. Logaeis which she diagnosed as normal. There was no indication of any strokes, eye ptosis, neurological transmittal issues or cranial nerve damage.** (App. #1 – Report of Dr. Logaeis)

On May 3, 2019, (one week later) the **admitting report at the University of Minnesota Hospital signed by Dr. Nikolai Vuljaj also acknowledged that Ms. Fearing had no reports of any strokes, neurological or cranial nerve issues and everything appeared to be normal.** That was until Dr. Nikolai Vuljaj and nurse Michael Rendel injected her with poisonous toxins before releasing her on May 3, 2019. Rude or insolent touching of another is battery. *1980 Pugsley v. Privitte 220 Va. 892, 263 S.E., 2d 69.* (App.#2 – Report of Dr. Vuljaj).

**Some 4 hours later**, Ms. Fearing was convulsing, coughing up a pinkish phlegm and unable to stabilize herself and suffering an extreme darkness and pain in her head. Her condition only worsened as time passed and recently, she was diagnosed with a life-threatening incurable rare disease LEMS Myasthenic Gravis. (App. #3 – Report of Dr. Angela Robinson Border)

On April 5, 2022, Defendant University of Minnesota Medical Center presents a Notice of Motion to Dismiss, based on their own fabricated alternative version of facts that could never be proven in court -because they are unfounded and filled with malicious intent to cloud the real issues against them. Thereby essentially attempting to subvert the truth and thus denying true material facts to be entered in with discovery. This is called "fraud upon the court" which has

2

been a reality from the first day this Defendant was named in this medical malpractice lawsuit as the medical provider that injects poisonous toxins into their patients. They argue that Plaintiff Fearing's Medical Malpractice lawsuit should be dismissed for the following: (1) Lack of personal jurisdiction, (2) Insufficient Service of Process, (3) Failure to state any claims upon which relief can be granted, (4) The applicable Statute of Limitations two-years is expired, but their arguments are nothing more than fraudulent efforts to confuse issues of material fact. The attack upon Ms. Fearing was on May 3, 2019, Defendants were served on May 3, 2021. They would all have been served sooner, if they hadn't fraudulently concealed their corporate standing at the Minnesota Secretary of State's Office.

**Background of UMMC and MHealth Fairview**

There was never a response to the summons and complaint from MFairview/dba University of Minnesota Medical Clinic, dated May 3, 2021. **According to the Minn. Secretary of State, CT Corporation Systems is located at 1010 Dale St. in St. Paul, MN – So is Registered Agent Office For Fairview Health Services. (where notice of Summons and Complaint were filed)** They are one and the same operating for all University of Medical Facilities. It's obviously a "con game" and needs to be further investigated. **They eat and play in the same pen, but have no awareness of one another** (App.# 4 – MN State Record of Fairview Health Services) Yet, an Affidavit dated March 22, 2022, was submitted by a Laura Singh in Motion to Dismiss Second Amended Complaint by MHealth Fairview which belies MN State Record. In other words, CT Corporation has the ability to write any false and untruthful Affidavit. The perjury and fraud upon the court never ends, similar to their counterparts in this case and Plaintiff again, will ask for Sanctions for their perjures and fraudulent conduct. 3

**On November 18, 2021,** was the first time that Plaintiff received any acknowledgement

3

from MHealth Fairview dba/University of Minnesota Medical Center was on November 18, 2021, **after they were already in default.** Their legal counsel filed for an objection to a subpoena for employment corporate records and employment records for Dr. Nikolai Vuljaj and Nurse Michael Rendle. However, legal counsel, Paul Peterson never showed up for the Hearing, **therefore, a no-show for the hearing regarding the subpoenas**. Judge Klein ruled in Defendant's favor denying Plaintiff's efforts for discovery. In his pleadings, there was no mention ever made that his client had not been served. That idea was born when that very same lie worked for University of Minnesota Physicians and they were dismissed with prejudice. Fraud upon the court begets more fraud upon the court. Plaintiff filed a response to their objections dated November 18, 2021, (App.# 5 – Letter to Paul Peterson) and also informed them at that particular time that they were in default due to their refusal to respond to the summons and complaint.

(Note: These subpoenas for corporate and employment records, and request to identify toxins injected to Ms. Fearing were quashed in this matter and Plaintiff was again denied her discovery efforts and due process) **There was never any mention of not being served until April 5, 2022, eleven months after service was made.**

**On December 30, 2021,** Plaintiff received a second response from Defendant's legal counsel with a Joint and Separate Answer for MHealth Fairview and Dr. Nikola Vuljaj and nurse Michael Rendle. **Legal counsel still makes no mention that his clients weren't served a Summons and Complaint**. Apparently, that never occurred to them until April 5, 2022, when he filed a Motion to Dismiss. Once again, as with his motion to quash subpoenas, He files a motion after the Corporations were already in default by six months. He also responds to Plaintiff's Second Amended Motion. (A Motion necessitated by the fraudulent concealment of corporate entities of University of Minnesota Medical Facilities to correct the complaint as a

4

matter of right pursuant to Minn. Civ. Proc. Rule 15.01; and as so stipulated as a right to amend in the initial complaint filed by Plaintiff. <u>The issue with Defendant MHealth Fairview's claim is that they have no standing as they have defaulted</u>. It's clear that they are attempting to revive their defaulted status by aligning themselves with Dr. Vuljaj and Nurse Rendle. **<u>The Motion is not valid and therefore, void as a matter of law.</u>**

<u>Response to Minn. Stat. 145.682.</u>

**A. The problem Defendants have is that they have no defense for their Gross Negligence and Criminal Conduct. All Defendants in this case, have no defense for their actions in poisoning Ms. Fearing in deference to their "Hippocratic Oath" of "Due no Harm". But intentional harm they did, by luring Ms. Fearing back to the UMMC Hospital on the pretext of a blood draw and then injecting her with poisons.**

B. They made no record of what they injected into Ms. Fearing, which in itself is in violation of Federal HIPPA Law. And then they don't record the injections, hoping nobody would find out about the poisoning. Well, people did find out, the social worker, Kathleen Allen, Ms. Michaun Psihos, and Carlson Forensics and Medicare. Even if there hadn't been witnesses to what happened, the proof is in the result of Ms. Fearing's medical condition and diagnosis of an incurable – life threatening disease, requiring 24-hour care.

C. Now they complain that the initial Complaint did not specifically have the wording 'Negligence'. Ms. Fearing felt there was no need to label each action and categorize it stating, "now this is negligence", "now this is considered battery," "this is considered to be assault and battery" and this is "unwanted touching". The description in the complaint of what they did to her, is clear as to what took place – an attempt on her life by **<u>unauthorized treatment</u>** (a) failure to disclose, (b) no agreement from Ms. Fearing authorizing poisoning, (c) sufficient harmful

consequences – a prolonged death sentence by poisoning. <u>This can result in gross negligence or this can also result in manslaughter if Ms. Fearing expires from the poisonous injections.</u> Case law has described gross negligence as including an attitude or state of mind characterized by an entire failure to the consequences of one's actions, in other words, an attitude of reckless disregard of such consequences and complete disregard for the patient's well-being. Let this response clear-up any misunderstanding as to negligence, gross negligence, negligence, abuse, assault and battery. It has already been established that the gravamen of this case is assault and battery. There is no question that gross negligence by Defendants in this case is also very much at play.

**D**. Prior to May 3, 2019, Ms. Fearing was a fairly healthy senior with an active life. She had no neurological issues, she had no brain injury, she had no terminal disease prior to May 3, 2019. After her visit with Dr. Nikolai Vuljaj and Nurse Michael Rendle, she exited with an incurable life-threatening disease. There is no ambiguity in that. **<u>Whether she was lured back for a poisonous experiment by the University of Minnesota Medical Facilities or was she targeted for her activism and civil rights work, the intentions of both Dr. Vuljaj and Nurse Rendle were to cripple and silence her.</u>** Only Dr. Vuljaj and Nurse Michael Rendel know the answer. The fact that they never recorded the poisonous toxics that they injected into her, suggests foul play. Why they chose to treat Ms. Fearing in such a gross-negligent manner by injecting these 7 vials of toxic poisoning into her needs to be further investigated by authorities. The attack was premediated and the intent was to harm Ms. Fearing - to silence and kill her slowly. <u>Ms. Fearing didn't die on May 3, 2019, but she is dying more every day because of the poisons that were injected, now rotting and decaying her internal organs, soft tissues and bones that absorbed the poisonings.</u>

**E.** On July 26, 2021, Dr. Angela Borders-Robinsons of the Noran Neurological Clinic

6

diagnosed Plaintiff with an incurable-life threatening disease – Lambert-Eaton Myasthenic Syndrome and a cranial nerve disorder, requiring Plaintiff needing around the clock care. When Ms. Fearing inquired as to the possibility of a Chelation Therapy or some other treatment, Dr. Robinson indicated that it was too late as the poisons had already entered into the soft tissue and organs.

**F**. Ms. Fearing's case regardless of what label is attached, gross negligence, assault, abuse, battery, tort, etc**. the negligence is so apparent a presumption of the breach of duty leading to the action or occurrence can be made by the court or jury without expert testimony**. **Under the Doctrine of Res Ipsa Loquitur** (3) conditions must exist: (1). Injury or accident must be one that does not happen unless a party was negligent. (2). Injury was due to an instrumentality **(needles)** that only the defendant has control over. (3). Injured party had no control over the occurrence or injury. **Fearing's case has all of those elements**.

**G**. Expert testimony is generally required to establish the standard of care and departure from that standard for the conduct of Physicians. ***Tousignant v. St. Lous County, 615 N.W. 2d 53.58 (Minn. 2000)***. The purpose of expert testimony is to interpret the facts to conduct which constitutes Medical Malpractice and causation. ***Sorenson v. St Paul Ramsey Med Ctr., 457 N.W. 2d 188, 192 (Minn. 1990)***. Most medical malpractice cases involve complex issues of science or technology. In this case, it doesn't take a doctor or scientist to conclude that injecting a patient with poisoning is a very bad idea with disastrous results. That is a judgment call that any layperson could conclude without an expert. Therefore, this case is an "exceptional case" whereby "expert testimony' is not required. ***Sorenson, 457 N.W. 2d at 191***.

**H**. On May 14, 2019, a week and a half after Dr. Vuljaj and Nurse Rendle assaulted Ms. Fearing, Mayo Clinic found that Plaintiff had suffered numerous multiple strokes, neurological transmittal issues, Cranial nerve damage, eye ptosis, etc., chronology was submitted in the Complaint.

7

(app.# 6) Even though expert testimony is not needed in this case, a Plaintiff in a malpractice action may establish their claim with expert testimony solely from the defendant doctors (Mayo Clinic) See, e.g. ***Anderson v. Florence, 288 Minn. 351, 360-361, 181 N.W. 2d 873, 879 (1970)*** Plaintiff will be using the findings and diagnosis of the Mayo Clinic. Afterall, it was Mayo Clinic that discovered the Lambert-Eaton Myasthenic Syndrome – named after Dr. Lambert, Mayo Physician and Dr. Eaton, also a Mayo Physician. Mayo Clinic had all the necessary expertise to offer medical treatment to Ms. Fearing. They chose not to as covering up negligence and an assault for the University of Minnesota Medical Facilities took priority.

**Response to Notice and Motion to Dismiss Pursuant to Rule 12.02(b), (d) and (e)**

A.  <u>The summons and complaint were properly and timely served (as directed by legal Counsel for Minnesota University of Minnesota Physicians, Ms. Stacey Montgomery) upon University of Minnesota Medical Clinic, MFairview Health, University of Minnesota Physicians, by Plaintiff Fearing on May 3, 2021</u>. There is no possible way that Ms. Fearing could have gathered any information regarding **service upon all defendants** of the University of Minnesota Medical Facilities if she hadn't been informed by their in-house legal counsel Ms. Stacey Montgomery (See Civil Summons dated, on May 3, 2021, CIV022B – signed and dated on May 3, 2019, by agent of service for U of M Physicians, Jana Floyd and a CIV022B signed on May 3, 2021 by Thomas Nelson). CIV022A is moot because CIV022B was signed immediately on May 3, 2021 and no need for CIV022A (See Affidavit of Thomas Nelson dated July 13, 2021) This was in response to Defendant's denial of service of Summons and complaint In the Affidavit Mr. Nelson states,

> "**My service on May 3, 2021 and May 4, 2021 to <u>an agent CT Corporation for UMMC, CT Corporation.</u> Her name was Jana Floyd. When I handed her the**

>Summons and Complaint, she graciously accepted it. She asked me to come back the following day to complete the paper work. The documents were signed as being received on May 3, 2021. <u>She was aware that it was service also on the University of Minnesota Physicians.</u> At no time did she state that she had no authority to accept the service of process."

(Note: A correction to second paragraph of affidavit App. # 6 - Tom Nelson affidavit.)

**B.**   All defendants in this case have participated in this lawsuit for almost a year. If they had any defense they had ample opportunity to present it. Now they attempt to confuse issues even more by suggesting they weren't served properly. It is only the fraudulent concealment of the material facts by Defendants for the University of Minnesota Medical Facilities that question any dispute of service. Due to the threats by Kate Baker, Ms. Fearing amended the initial Complaint date to May 10, 2021, on an amended complaint and Service was again made <u>on May 10, 2021, as a courtesy (with date change)</u> to the University of Minnesota Physicians located at 720 Washington Avenue S.E, Minneapolis, Mn., even though they were duly served on May 3, 2021. All defendants were served again on December 15, 2021, on the Second Amended Complaint, which was necessitated due to fraudulent conveyance, fraudulent concealment, fraud upon the court, perjury and other Willful Acts of Omission that were articulated and pled in numerous pleadings filed by Plaintiff.

### III. SANCTIONS

Pursuant to Rule 11.02, and 11.03 Plaintiff is requesting that sanctions against all officers of the court including Judge Joseph R. Klein that partook in this travesty to commit fraud upon the court. ( *Poole v. Teztron,* 192 F.R.D. 494 (D. Md 2000, *Carlucci v. Piper Aircraft Corp.* 775 F.2d 1440 (11th Cir. 1985. *Malautea v. Suzuki Motor Company,* 987 F. 2d 1536 (11th Cir. 1993, *Tuto Wells Contamination* 120 F. 3d 368 (3rd Cir. 1997, *Chambers v. Nasco* 501 US.32)

### IV. CONCLUSION

1. **MHealth Fairview d/b/a University of Minnesota Medical Center defaulted in August, 2021,** and no longing have any standing in this case. A Default Judgment is being executed by

9

Plaintiff. <u>**The summons and complaint were properly and timely served**</u> (as directed by legal Counsel for Minnesota University of Minnesota Physicians, Ms. Stacey Montgomery) upon University of Minnesota Medical Clinic, MFairview Health, and University of Minnesota Physicians, by Plaintiff Fearing on May 3, 2021. Affidavit of Tom Nelson (process server)

2. Most medical malpractice cases involve complex issues of science or technology. <u>**In this case, it doesn't take a doctor or scientist to conclude that injecting a patient with poisoning is a very bad idea with disastrous results. Therefore, this case is an "exceptional case" whereby "expert testimony' is not required.**</u>

3. **The problem Defendants Dr. Nikola Vuljaj and Nurse Michael Rendle have is that they have no defense for their Gross Negligence and should be prosecuted. All Defendants in this case, have no defense for their actions in poisoning Ms. Fearing in deference to their "Hippocratic Oath" of "Due no Harm". But intentional harm they did, by luring Ms. Fearing back to the UMMC Hospital on the pretext of a blood draw and then injecting her with poisons.**

## V. PLAINTIFF PRAYS

1. **For a trier-of-facts who conducts themself with honesty, integrity and deserving to be addressed as "Your Honor".**
2. **For a permanent injunction prohibiting the Defendants, their agents, successors and any person in active concert with the Defendants, from (1) denying Plaintiff her due process rights and (2) harassment and threats to her safety.**
3. **Jury trial to determine - Award Compensatory Damages in excess of ($15,000,000.00) fifteen million, and additionally ($15,000.000. in punitive damages against each Defendant.**
4. **Award Attorney fees of ($25,000.00) twenty-five thousand.**
5. **Grant Plaintiff such further relief as the Court deems proper.**

April 20, 2022                                  Respectfully submitted,

*[signature: Marlene Fearing]*

Marlene Fearing, Plaintiff - attorney pro se